McCooe, J.
(dissenting). I respectfully dissent. The defendant was concededly in the business of dyeing and finishing textile goods and it offered the goods of the plaintiff for sale at auction for unpaid storage charges in alleged compliance with article 7 of the UCC. Plaintiff contends that the defendant did not comply with the procedural requirements for a sale under article 7.
The parties have charted their own course and while the initial discussion concerns issues not raised at the trial it partially explains why the defendant did not follow the article 7 procedural requirements.
The initial question should have been whether the defendant was a warehouseman. Both parties proceeded upon the erroneous basis that it was. A warehouseman is a person in the business of storing goods for hire (UCC 7-102 [1] [h]). The defendant (Renco Finishing Corp.) was not in the business of storing goods. The unfinished goods were sold by the plaintiff to a third party who directed that they be shipped to the defendant. The goods were delivered to the defendant to be processed and not for storage. They remained on its premises because of a dispute between the plaintiff and this third party over alleged defects in the goods and title to the goods was awarded to the plaintiff in arbitration four years later.
The defendant testified at the trial that he didn’t know “what a receipt means.” He further testified that the third party who sent him the goods for processing was not charged for storage unless the goods were there for six months. He clearly was not in “the business of storing goods for hire” but of processing. The fact that an auto repair shop charges storage fees for cars not picked up shortly after the repairs are completed would not make it a parking lot.
The trial court’s “Findings of Fact” state that the defendant never entered into any contractual agreement with the plaintiff, that the third party had been the owner of the goods *152 before the arbitration award and that the defendant had been submitting storage bills to the third party before the award.
National Resources Trading v Trans Frgt. Lines (Maher Terms.) (766 F2d 65 [2d Cir 1985]) is factually distinguishable and is dicta for the point cited. The issue in that case was whether a stevedore firm was a gratuitous bailee in a conversion action and whether or not it was a warehouseman had no bearing on its liability. A warehouse receipt was never discussed since there was no issue as to a lien. Furthermore, since the plaintiff was a Rhode Island corporation, the defendant a New Jersey corporation and the storage and sale took place in New Jersey, the law of New Jersey should have been applied.
Addressing the issues raised at the trial and assuming that the plaintiff was a warehouseman, the grounds for reversal are that the plaintiff never agreed to pay storage charges and that there was no valid warehouseman’s receipt issued, which is a condition precedent to a lien attaching. The documents offered to establish a warehouse receipt were bills sent four years after the delivery. It is not the content of the documents but the timing of the sending of them that disqualifies them as constituting a warehouse receipt.
A receipt is commonly understood and authoritatively defined as a writing acknowledging the receipt of goods or money. It is issued simultaneously or shortly after the transfer. This alleged receipt was issued and dated four years later.
UCC 7-202 lists the essential terms of a warehouse receipt and states that, unless “each of the following” is embodied therein the warehouseman is liable for damages. The essential terms include the date of issue of the receipt and the rate of storage and handling charges. The purpose of this term is so that the party liable would know at the time of delivery what the rate was, not four years later. The date on the receipt should show the date of delivery and when the charges begin.
In summary, the plaintiff was not liable for storage charges it never agreed to. It never received a “warehouse receipt” from the defendant until four years after the delivery when it received bills stating in substance that he should pay for storage charges. Since there was no valid warehouse receipt, there was no lien. The subsequent actions of the defendant in selling the goods to itself at the auction, without an auctioneer, was self-help without any statutory or judicial authorization. The liability of the third party for the storage fees is not an issue and therefore it will not be discussed.
*153 Dupont v Joedon & Co. (107 AD2d 369 [1st Dept 1985]), cited by the majority, is not relevant since the public sale was by a judgment creditor and not a warehouseman. In any event, this ground was never raised at the trial or in the briefs.
The judgment should be reversed and a new trial directed.
Davis and Suarez, JJ., concur; McCooe, J.P., dissents in a separate memorandum.